

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 4 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DENAR RESTAURANTS, LLC, | § | Bankruptcy No. 09-41675-RFN-11 |
| | § | |
| Debtor. | § | Adversary No. 09-04165-rfn |
| | § | |
| IN RE: | § | |
| | § | |
| | § | |
| GOLDEN RESTAURANTS, INC., | § | Bankruptcy No. 09-44425-RFN-11 |
| ET AL., | § | |
| | § | Adversary No. 09-04253-rfn |
| Debtors. | § | |
| | § | |
| | § | |
| JESSICA POLLEY, | § | |
| | § | |
| Appellant, | § | |
| | § | District Court Case |
| VS. | § | No. 4:09-CV-616-A |
| | § | (Consolidated with |
| DENAR RESTAURANTS, LLC, ET AL., | § | No. 4:09-CV-641-A and |
| | § | No. 4:09-CV-642-A) |
| Appellees. | § | |

MEMORANDUM OPINION
and
ORDER

After having considered (1) the three motions of appellant,
Jessica Polley, ("Polley") for leave to file interlocutory appeal
and administratively consolidate, (2) Polley's motion to stay
pending appeal, (3) the replies of appellees to such motions, and
(4) the discussions between counsel and the court during the

telephone conference/hearing conducted January 8, 2010, the court
has concluded that Polley's motions for leave to file
interlocutory appeals are meritorious but, for the reasons stated
in this memorandum opinion, the court is withholding ruling on
such motions at this time, and that, consistent with the
discussions had during such telephone conference/hearing, the
court is staying further activity in Adversary Nos. 09-04165-rfn
and 09-04253-rfn and related proceedings pending possible
withdrawal of reference as to those and the related proceedings.

I.

### The Bankruptcy Court Rulings Polley Wants to Appeal and Relief Polley Requests

Polley's motion by which Case No. 4:09-CV-616-A was
initiated sought leave to appeal from an interlocutory order the
bankruptcy court signed on September 4, 2009, in Adversary No.
09-4165-rfn in the Denar Restaurants, LLC ("Denar") bankruptcy
case setting aside as to Denar an October 15, 2008, state court
default judgment in favor of Polley against Denar and other
defendants, granting a new trial as to Denar in the state court
case (which had been removed to the bankruptcy court), remanding
the state court case as to all parties to the default judgment
other than Denar, and denying Polley's motion for continuance of

2

Denar's motion to set aside default judgment and for new trial.
The motions by which case Nos. 4:09-CV-641-A and 4:09-CV-642-A[1]
were initiated sought leave to appeal from interlocutory orders
the bankruptcy court signed on October 8, 2009, in Adversary No.
09-04253-rfn in the consolidated bankruptcy case in which Golden
Restaurants, Inc., and others are debtors (collectively, the
"Golden debtors"), setting aside the same default judgment as to
the Golden debtors and the non-debtor defendants named in the
default judgment, granting the Golden debtors and those non-
debtors a new trial in the state court case (which again had been
removed from the state court to the bankruptcy court after the
Golden debtors filed bankruptcy petitions), and denying Polley's
motion to sever, remand, and abstain.

Polley described the Matters for Appeal and Requested Relief
in her motions for leave as follows:

> Ms. Polley plans to appeal the bankruptcy court's
> decision to exercise jurisdiction over the Adversary
> Proceedings, set aside the Judgment and grant Denar and
> the Golden Corral Defendants a new trial, its decision
> to deny Ms. Polley's Motion for Continuance, and denial
> of Ms. Polley's Motions to Abstain and Remand the
> Debtor and Golden Corral cases (collectively, the

---

[1]Case Nos. 4:09-CV-641-A and 4:09-CV-642-A seem to be identical, apparently resulting from
the filing in the district court of two copies of the same motion, which were docketed in this court as
separate cases.

3

Orders Granting Motion for New Trial). On appeal, this
Court will be asked to determine:

1)   whether the bankruptcy court lacked
     jurisdiction to consider and reach the merits
     of the Motions for New Trial;

2)   whether, by denying Ms. Polley's Motion for
     Continuance, the bankruptcy court abused its
     discretion by refusing to defer to the
     Metro's Bankruptcy Court's, the state trial
     court's, and the Fort Worth Court of Appeals'
     decisions regarding the application of the
     automatic stay; and

3)   whether, by erroneously granting the Denar
     and Golden Corral Motions for New Trial, the
     bankruptcy court erroneously applied the law
     by determining that Debtor's mistake in law
     was an "exceptional or extraordinary
     circumstance" under Federal Rule of Civil
     Procedure 60.

     As a preliminary matter, Ms. Polley will seek to
have the Adversary Proceedings dismissed in their
entirety for want of jurisdiction. In the event the
Court determines that jurisdiction exists, Ms. Polley
will seek to have the Orders Granting Motion for New
Trial reversed and the Judgment reinstated.

Mot. for Leave in 4:09-CV-641-A at 9.[2]

_____

[2]The motion by which No. 4:09-CV-616-A was initiated has wording slightly different from that
quoted in the main text, but is essentially the same. Mot. for Leave in 4:09-CV-616-A at 7-8.

4

II.

## Chronology of Events Disclosed by the Parts of the Records Provided to the Court with the Motions for Leave and Oppositions Thereto Pertinent to Polley's Motions for Leave

Three state court lawsuits, to which the court will refer as "Polley I," "Polley II," and "Polley III," are parts of the historical facts leading to the motions for leave. The rulings of the bankruptcy court from which Polley seeks leave to appeal relate to a default judgment taken in Polley III. The court is setting forth below in chronological order the sequence of events that preceded, and led to, the filing of Polley's motions for leave to the extent the information is provided by the parts of the records the parties have provided to the court with the motions and the oppositions thereto:[3]

1.   The Judgment Rendered in Polley I

On July 25, 2007, the judge of the District Court of Tarrant County, Texas, 48th Judicial District, signed a judgment in Cause No. 4:08-209582-04, styled "Jessica Polley, Plaintiff, v. Metro Restaurants, LLC, Defendant" ("Polley I"), awarding Polley

---

[3]The court senses that there are items in the state court records pertaining to Polley III and the state court appeal from the default judgment in Polley III and in the Denar and Golden bankruptcy cases that were not provided by the parties to the court for consideration in connection with the pending motions for leave and oppositions thereto that could be relevant to the issues to be decided in response to those motions.

recovery from Metro Restaurants, LLC ("Metro") of $869,172.95
based on a jury verdict establishing Metro's liability to Polley
for assaults on her by persons who were alleged to be employees
of Metro, and fixing her actual damages at $750,000.00.  The
judgment included $119,172.95 as prejudgment interest.

      2.   <u>The Filing of Polley II</u>

On July 2, 2008, Polley filed a suit in the District Court
of Tarrant County, Texas, 153rd Judicial District, bearing Cause
No. 153-132238-08, styled "Jessica Polley, Plaintiff, v. Metro
Restaurants, LLC; Metro A, LLC; Denar Restaurants, LLC; Sun
Holdings, LLC; POP Restaurants, LLC; Golden Restaurants, Inc.;
Firebrand Properties, LP; Corral Group, LP; Kansas Corral, LLC;
Sunny Corral Management, LLC; Frys Management, LLC; TAG Corral,
LLC; Indie Corral, LLC; An-Mar Companies, LLC; and Guillermo
Perales, Defendants" ("Polley II").  Polley alleged that the
defendants were related entities and that Metro had transferred
assets to the other defendants with the intent to delay, hinder,
and defraud Polley in her attempts to make collection of the
award made to her by the July 25, 2007, judgment in Polley I.

      3.   <u>The Filing of the Metro Bankruptcy Case</u>

On July 10, 2008, Metro filed for Chapter 7 bankruptcy in
the United States Bankruptcy Court for the Northern District of

6

Texas, Dallas Division.   The case was assigned to Bankruptcy

Judge Harlin DeWayne Hale and was docketed as Case No. 08-33377-

HDH-Chapter 7 (the "Metro bankruptcy case").   On August 5, 2008,

the attorney who had represented Metro in Polley I filed with the

state court in Polley II a Notice of Chapter 7 Bankruptcy Case,

Meeting of Creditors, & Deadlines disclosing the existence of the

Metro bankruptcy case.   Apparently, no further action was taken

by Polley in Polley II.

        4.    The Filing of Polley III

    On September 10, 2008, Polley filed a suit in the District

Court of Tarrant County, Texas, 352nd Judicial District, bearing

number 352-232713-08, styled "Jessica Polley, Plaintiff, v. Metro

A, LLC; Denar Restaurants, LLC; Sun Holdings, LLC; POP

Restaurants, LLC; Golden Restaurants, Inc.; Firebrand Properties,

LP; Corral Group, LP; Kansas Corral, LLC; Sunny Corral

Management, LLC; Frys Management, LLC; TAG Corral, LLC; Indie

Corral, LLC; An-Mar Companies, LLC; and Guillermo Perales,

Defendants" ("Polley III").   The defendants named in Polley III

are identical to those who had been named in Polley II, except

that Metro was omitted from Polley III.   The liability facts

concerning the assaults on Polley that led to the July 25, 2007,

judgment in Polley I were re-alleged in Polley III in an

abbreviated form.  The "CAUSE OF ACTION" alleged in Polley III

was that:  "Defendants [naming defendants] are jointly and

severally liable for the negligence of Metro Restaurants, LLC.

Accordingly, Plaintiff seeks such damages from the above-named

Defendants."  Denar Objection to Mot. for Leave, Refiled Exs. at

32.[4]  On October 10, 2008, the attorney who had represented Metro

in Polley I filed in Polley III a notice pertaining to the Metro

bankruptcy case that was identical to the one he had filed in

Polley II.

        5.   <u>The Default Judgment in Polley III</u>

        The parties agree that the deadline for filing an answer in

Polley III was October 13, 2008.  None of the defendants filed an

answer by that deadline.  On October 15, 2008, Polley III was

transferred to the court in which Polley I was pending, there was

a hearing on Polley's request for default judgment in Polley III,

and a default judgment was signed.  At the hearing, counsel for

Polley declared that Polley was taking a nonsuit as to defendant

An-Mar Companies, LLC ("An-Mar"); and, the presiding judge

("Judge Evans") announced that "An-Mar has been non-suited" and

---

        [4]The "Denar Objection to Mot. for Leave, Refiled Exs. at ___" references are to a set of exhibits
Denar filed on January 4, 2010, in response to an order directing that Denar refile the exhibits to the
Objection it filed in No. 4:09-CV-616-A on November 12, 2009, in an appropriate form.

that "[t]he Court is going to change the caption on the judgment
to reflect that they are not in the case any longer." Id. at 44.
Polley was awarded by the judgment recovery of damages in the sum
of $957,011.63, plus post-judgment interest on that sum at the
annual rate of 8.25% and court costs, against Metro A, LLC; Denar
Restaurants, LLC; Sun Holdings, LLC; POP Restaurants, LLC; Golden
Restaurants, Inc.; Firebrand Properties, LP; Corral Group, LP;
Kansas Corral, LLC; Sunny Corral Management, LLC; Frys
Management, LLC; TAG Corral, LLC; Indie Corral, LLC; and
Guillermo Perales.  The judgment concluded with the recitation
that "[t]his judgment is final and disposes of all claims and
parties, and is appealable." Id. at 40.

6.   Motion for New Trial Filed in State Court by
     Defendants in Polley III

The defendants against whom the default judgment was
rendered in Polley III filed a motion for new trial in the state
court.  This court has not been provided a copy of the state
court motion for new trial but the court can infer from the
things that have been provided that all of the defendants named
in the Polley III judgment were movants and that the motion was
timely filed.

Judge Evans heard the motion on December 3, 2008. Two
witnesses were called at the hearing. One was Desiree Hall, an
employee of Sun Holdings, LLC, who had the responsibility to
calendar the answer dates in Polley III for all the defendants
and then to send it to outside counsel. Her recollection is that
the citations were served on the defendants around September 18;
and, she calculated that the defendants would be obligated to
answer the suit on October 20, 2008. She provided that
information along with a copy of Polley's petition in Polley III
to Greg Jones, the attorney for the defendants, sometime before
October 13. When she was informed that a default judgment had
been taken, she realized that she had miscalculated the answer
date, and that the true deadline for filing an answer was October
13. The other witness was Mr. Dobbyn, another employee of Sun
Holdings. Sun Holdings is "sort of an administrative company
that provides services to the other companies." Mot. for Leave,
Exs. at 92.[5] His duties at Sun Holdings included overseeing the
three cases Polley filed. Mr. Dobbyn described in a general way
the business activities of the defendants in Polley III, and he

---

[5]The "Mot. for Leave, Exs. at ____" references are to a two-volume set of exhibits Polley filed on
January 12, 2010, in response to an order directing Polley to refile the exhibits to her motions for leave in
an appropriate form.

explained that one or more of those defendants were not in
existence when Polley suffered the assaults that led to the July
25, 2007, judgment in Polley I and the default judgment in Polley
III.

At the hearing, Judge Evans took judicial notice that none
of the Polley III defendants filed an answer on or before October
20.  The attorney for the defendants urged Judge Evans to set
aside the default on the ground that the failure to timely file
an answer was the result of Ms. Hall's miscalculation of the
answer date.  An exchange between the judge and counsel for the
defendants during the course of the hearing suggests that the
defendants also urged that the stay in the Metro bankruptcy case
was applicable to the claims made in Polley III.

The motion for new trial was overruled by operation of law
on December 29, 2008, by reason of Judge Evans's failure to rule
on the motion.  See Tex. R. Civ. P. 329b(3) (providing that a
motion for new trial is overruled by operation of law if it is
not determined by written order signed within seventy-five days
after the judgment was signed).

11

7.   Appeal to the Court of Appeals, Second District of
     Texas, and the Response of the Court of Appeals

On January 29, 2009, the defendants in the Polley III

default judgment filed a notice of appeal to the Court of

Appeals, Second District of Texas, at Fort Worth, ("Fort Worth

Court of Appeals") from the default judgment and the overruling

of their motion for new trial.  The appeal was given No. 02-09-

00025-CV.  By letter of February 2, 2009, directed to counsel for

the Polley III default judgment defendants, the clerk of the

court of appeals acknowledged receipt of the notice of appeal,

but expressed the court's concern that the court "may not have

jurisdiction over this appeal from the trial court's March [sic]

15, 2008 Default Judgment because the judgment does not appear to

dispose of Defendant An-Mar Companies, LLC, and does not appear

to be a final appealable interlocutory order."  Denar Objection

to Mot. for Leave, Refiled Exs. at 57.  The clerk's letter

advised that the appeal would be dismissed for want of

jurisdiction unless on or before February 12, 2009, a party

desiring to continue the appeal filed with the court a response

showing grounds for continuing the appeal.

8.   Rulings by Judge Hale in the Metro Bankruptcy Case
     in Response to Request by Polley III Defendants
     for Injunctive Relief

On February 3, 2009, the defendants named in the Polley III

default judgment filed in the Metro bankruptcy case Adversary No.

09-03036-hdh against Polley and her state court attorney by which

they moved for an emergency temporary restraining order and

preliminary injunctive relief, to prevent Polley or her attorney

from doing anything to prosecute, advance, bring to trial,

enforce, abstract, levy, execute, or collect in connection with

Polley II or Polley III.

On February 5, 2009, Judge Hale signed a temporary

restraining order granting temporarily the relief sought by the

February 3 filing.  Among the findings made by Judge Hale were

that "[b]ased upon the limited evidence before the Court, there

is a substantial likelihood that the [defendants in the Polley

III default judgment] will prevail on their claims against

[Polley and her attorney] after trial on the merits, as to [the

Polley III defendants'] claims that the causes of action asserted

in [Polley II and III] are property of the Estate and that

[Polley and her attorney] have been, and will continue to,

violate the automatic stay absent injunctive relief."  Denar

Objection to Mot. for Leave, Refiled Exs. at 52, ¶ 7.

After a formal hearing conducted by Judge Hale on March 5, 2009, Judge Hale rendered an order on March 9, 2009, denying the injunctive relief requested by the motion filed February 3, 2009, this time stating the finding that it is "unlikely that the stay was violated by [Polley or her attorney]" and that "[the Polley III defendants] have not met their burden of showing a likelihood of prevailing on the merits." Mot. for Leave, Exs. at 003. Judge Hale went on to find that:

> The state court petition in Polly [sic] III seeks joint and several liability against nondebtor entities for negligence claims which Ms. Polley allegedly holds against them. These negligence claims could not have been raised by the Debtor or Trustee in this case. She did not sue these parties for claims, such as fraudulent transfer or alter ego, which would belong to the estate. Rather, she has asserted independent claims. . . . At the preliminary injunction hearing, Polley's counsel explained their theories upon which the claims rest. Those theories are not estate claims. . . .
>
> [The Polley III defendants] raise good points as to whether some of them can be liable to [Polley] in the state court judgment, as some of [the Polley III defendants] were not even in existence at the time Polley's claims arose. They also spent a lot of time during the preliminary injunction hearing trying to poke holes in [Polley's] pleadings and procedure before the state court. These issues, along with actual merits of the claims are more properly matters to be resolved by the state courts.

Id. at 004 (citation omitted).

14

9.    The Filing of the Denar Bankruptcy, the Removal of
      Polley III from the State Court, and the Order of
      Partial Remand and Order Finding the Default
      Judgment Interlocutory

On March 29, 2009, Denar filed for Chapter 11 bankruptcy in

the United States Bankruptcy Court for the Northern District of

Texas, Fort Worth Division ("Denar bankruptcy case").  The case

was assigned to Bankruptcy Judge Russell F. Nelms.  On March 25,

2009, Denar caused Polley III to be removed to the bankruptcy

court, where it was docketed as Adversary Proceeding No. 09-

04165-rfn.  On March 30, 2009, Polley filed a motion asking that

Polley III be remanded to the state court and requesting that the

bankruptcy court abstain from Polley III.  Denar filed a motion

on April 29, 2009, seeking a determination that the default

judgment in Polley III was interlocutory.

On May 28, 2009, following a hearing held May 26, 2009, in

Adversary No. 09-04165-rfn, Judge Nelms signed an order remanding

Polley III to the state court as to all parties but Denar, but

denying a remand as to Denar.  Judge Nelms stated on the record

of the hearing the reasons for his rulings as follows:

> First, Polley's claims against these defendants
> are grounded in state law.

> Second, because the claims are grounded in state
> law, state law issues predominate over bankruptcy
> issues.

Third, the evidence does not suggest that the claims cannot be tried expeditiously in the state court system. Or, stated another way, there is no certainty that the claims can be adjudicated more expeditiously in the federal system than in the state system.

Fourth, to the extent that this Court exercises jurisdiction over those claims, those claims are related at best, and they represent the outer limits of bankruptcy jurisdiction.

Denar Objection to Mot. for Leave, Refiled Exs. at 63-64. Judge Nelms rejected one after the other the various arguments Denar had advanced in opposition to the remand. Id. at 64-67. He announced from the bench that "to the extent that any stay at all applies to Polley's claims against the non-debtor defendants, that stay is lifted for cause." Id. at 68. The bankruptcy court did not lift the stay as to Polley's claims against Denar in Adversary No. 09-04165-rfn.

Again on May 28, 2009, Judge Nelms signed an order declaring as to Denar that the Polley III default judgment was interlocutory. The order said that it did not apply to any defendant in the remanded Polley III.

10. Further Activity on the Part of the Fort Worth Court of Appeals and the Polley III District Court

While the parts of the record submitted to the court with the motions for leave and oppositions do not appear to be

complete on these subjects, the court notes from the items that
were furnished that on June 30, 2009, the Fort Worth Court of
Appeals signed an order in the appeal No. 02-09-00025-CV (a)
granting a motion filed by defendants in Polley III (as
appellants in the appeal) to reopen the case, (b) abating the
appeal and remanding the case to the trial court for the entry of
(i) a written order nonsuiting An-Mar in accordance with the oral
announcement of nonsuit as to An-Mar made on the record by Polley
in open court on October 15, 2008, and (ii) a written order
nonsuiting or severing Polley's causes of action against Denar,
(c) ordering that the appeal was to be reinstated without further
order of the court upon receipt by the court of the clerk's
record containing the two orders the court of appeals required,
and (d) denying the motion of the Polley defendants to
temporarily stay enforcement of the Polley III default judgment.

On July 10, 2009, the Polley III defendants (other than
Denar) filed in the Polley III district Court a motion to quash
and for protective order seeking a ruling that Polley should not
be permitted to take post-judgment discovery or other enforcement
actions in Polley III.  Basically, the ground of the motion was
that post-judgment discovery and actions to enforce the Polley
III judgment should not be permitted because the Polley III

17

judgment was interlocutory.   Judge Evans judge heard the

emergency motion on July 13, 2009.   During the hearing, the judge

signed an order stating that "[o]n the 15th day of October, 2008,

the Court granted Plaintiff's Non-Suit as to An-Mar Companies,

LLC."   Golden Objection to Mot. for Leave, Refiled Exs. at 81.[6]

The district judge denied the motion to quash, announced that he

was going to order that post-judgment depositions be taken in

Polley III, and directed the parties to submit a new scheduling

order that depositions will be scheduled within fourteen days of

the date of the hearing.

On July 17, 2009, the appellants in appeal No. 02-09-00025-

CV filed with the Fort Worth Court of Appeals an emergency motion

to clarify the June 30, 2009, order of the court of appeals.   The

thrust of the motion was to obtain a declaration that the Polley

III default judgment was interlocutory and, therefore, not

appealable until Judge Evans signed the July 13, 2009, order

nonsuiting An-Mar.   Also, the appellants in the appeal filed in

the court of appeals in mid-June 2009 an emergency motion to

temporarily stay enforcement of the Polley III judgment.   On July

---

[6]The "Golden Objection to Mot. for Leave, Refiled Exs. at ___" references are to a set of exhibits the Golden debtors filed on January 4, 2010, in response to an order directing them to refile the exhibits to the Objection they filed on November 13, 2009, in No. 4:09-CV-642-A in an appropriate form.

22, 2009, the Fort Worth Court of Appeals issued an order denying

the emergency motion to clarify.[7]

> 11.   The Filing of the Golden Bankruptcies and the
>        Second Removal of Polley III from the State Court

On July 23, 2009, Polley III default judgment defendants

Golden Restaurants, Inc., TAG Corral, LLC, Indie Corral, LLC, and

Kansas Corral, LLC, filed bankruptcy cases in the United States

Bankruptcy Court for the Northern District of Texas, Fort Worth

Division, which are being jointly administered under No. 09-

44425-rfn ("Golden bankruptcy cases").  The cases were assigned

to Judge Nelms.  On the same date, the debtors in the Golden

bankruptcy cases caused Polley III again to be removed to the

bankruptcy court where, this time, it was docketed as Adversary

Proceeding No. 09-04253-rfn.

> 12.   Further Motions Filed in the Denar and Golden
>        Bankruptcy Cases

On July 17, 2009, Denar filed in the Denar bankruptcy case a

motion to set aside the Polley default judgment and for new

trial, asking that the default judgment be set aside under the

---

[7]The parties did not provide the court documentation as to whether both the requirements of the June 30, 2009, order of the court of appeals were satisfied or whether the appeal was reinstated. There is nothing definitive in the material the parties provided to the court for consideration in connection with the motions for leave and oppositions thereto that would enable the court to understand the current status of the appeal to the Fort Worth Court of Appeals from the Polley III judgment. The parties have been directed to provide the court the complete procedural history and current status of the appeal along with copies of all items that bear on, reflect, or explain such procedural history and status.

authority of parts (1), (2), (4), and (6) of Rule 60(b) of the

Federal Rules of Civil Procedure and under Texas law, as

articulated by the Texas Supreme Court in <u>Craddock v. Sunshine</u>

<u>Bus Lines, Inc.</u>, 133 S.W.2d 124 (Tex. 1939).  In arguing that

Denar's failure to file a timely answer to the petition in Polley

III was due to a mistake or accident, Denar gave the following

explanation:

> 68.  Here, [Denar's] failure to timely answer the
> Petition was the result of an internal, good faith
> calendaring error as to the answer deadline.  This
> error would have been prevented and corrected by Jones,
> had he not believed that the filing of the Bankruptcy
> Notice stayed Polley III.  At no time was there any
> intentional disregard or conscious indifference, as the
> evidence will demonstrate.  Even if there was some
> intention not to answer the Petition -- which there was
> not -- that intention is negated if caused by a mistake
> or accident.  [Denar's lawyer's] and [Denar's] good
> faith belief that the automatic stay applied to Polley
> III such that no answer need be filed is exactly the
> type of mistake or accident, validated by Judge Hale's
> TRO as reasonable, that is the hallmark of relief from
> a default judgment.

Mot. for Leave, Exs. at 031, ¶ 68.

On July 30, 2009, a virtually identical motion to set aside

default judgment and for new trial was filed by the debtors in

the Golden bankruptcy cases.  The remaining Polley III

defendants, other than Denar, joined in the motion.

Polley responded to Denar's motion to set aside default
judgment and for new trial on August 14, 2009.  She included with
the response a motion for continuance, urging that the bankruptcy
court "continue the hearing on [Denar's] motion until such time
as the propriety of the underlying state court judgment is
concluded in state court."  Mot. for Leave, Exs. at 102.

Polley responded to the Golden motion on August 12, 2009.
On that same date she filed in the Golden bankruptcy cases an
emergency motion to sever, remand, and abstain, asking the
bankruptcy court to sever the claims made in Adversary No. 09-
04253-rfn against the non-bankrupt defendants, remand the dispute
against the non-bankrupt defendants to the state court for
disposition under state law, and abstain from hearing Adversary
No. 09-04253-rfn until post-discovery has been conducted in the
state court.

13. September and October 2009 Rulings Made by the
    Bankruptcy Court in the Denar and Golden
    Restaurants Bankruptcy Cases

Apparently there was a hearing on August 18 and 19, 2009, on
the motions to set aside default judgment and for new trial and
for continuance in Adversary No. 09-04165-rfn and on September
24, 2009, on the motion to set aside default judgment and grant
new trial and emergency motion to sever, remand, and abstain in

Adversary No. 09-04253-rfn.  The parties have failed to provide
to the court the record of either of those hearings.

On August 27, 2009, Judge Nelms conducted a proceeding for
the purpose of announcing his rulings on the motion to set aside
default judgment and for new trial filed by Denar in Adversary
No. 09-04165-rfn.  Judge Nelms concluded that Denar's request for
relief under Rule 60(b)(6) should be granted.  He reasoned that
the defendants in Polley III did not fail to timely file an
answer by reason of a miscalculation of the answer date but,
instead, failed to timely answer because of a belief on the part
of their responsible official, Mr. Dobbyn, that the claims in
Polley III were stayed by reason of the filing of the Metro
bankruptcy case.  Judge Nelms considered that the Polley III
state court pleading reasonably could be construed to assert
alter-ego or single business enterprise claims which, under the
authority of S.I. Acquisition, Inc. v. Eastway Delivery Services,
Inc. (In re S.I. Acquisition, Inc.), 817 F.2d 1142 (5th Cir.
1987), could be assets of the Metro bankruptcy estate.  He also
noted that Judge Hale initially believed that Polley III
purported to assert estate claims.  Judge Nelms added that
"[g]iven . . . the cryptic nature of the allegations of the
Polley III complaint, this Court believes that the claims alleged

22

therein were arguable property of the estate and continue to be

arguable property of the estate until Judge Hale ruled

otherwise."  Mot. for Leave, Exs. at 124.

Judge Nelms also credited testimony by Mr. Dobbyn that he

wondered whether the Metro bankruptcy stay precluded him from

filing an answer, which Judge Nelms considered to be a reasonable

concern, bearing in the mind the holding of the Fifth Circuit in

Pope v. Manville Forest Products, 778 F.2d 238 (5th Cir. 1985).

A final point made by Judge Nelms in support of his conclusion

that Rule 60(b)(6) relief should be granted was his conclusion

that the filing of the request for the relief was timely.

On September 4, 2009, Judge Nelms issued an order that

"[Denar's] default in failing to file an answer in [Adversary No.

09-04165-rfn] on or about October 13, 2008, is SET ASIDE" and

that "[Denar] is granted a NEW TRIAL in [Adversary No. 09-04165-

rfn]."  Mot. for Leave, Exs. at 135.  Polley's motion for

continuance was denied by the same order.

On October 2, 2009, Judge Nelms had a telephone conference

with counsel in Adversary No. 09-04253-rfn for the purpose of

announcing his rulings on motions pending in that adversary

proceeding.  He commenced by recognizing the import of a new

argument made by Polley, saying:

> This case did introduce a new argument by
> Polley, that being that this Court does not have
> jurisdiction to set aside Judge Evans's order because
> . . . that order had been appealed to the Fort Worth
> Court of Appeals, and as such, I only had the same
> power that Judge Evans himself had, which according to
> Polley was no authority at all to reverse or set aside
> the default judgment.  Polley contends that . . . the
> plenary power over Judge Evans's order had vested in
> the Fort Worth Court of Appeals, and as such,
> notwithstanding the removal of the case from Judge
> Evans's court, there was nothing for this Court to
> decide.  This is an important issue, and
> notwithstanding any complaint by the Debtors as to the
> timing of that issue, it is an issue that the court
> must address.  Ultimately, this issue circles back to
> one of the first issues addressed by this Court in
> Denar, and that is whether Judge Evans's order granting
> the default judgment was final or interlocutory.

Id. at 449-50.

Judge Nelms noted that there had been developments in the

case since he ruled in May 2009 in Adversary No. 09-04165-rfn

that the judgment was interlocutory as to Denar in that the

remanded defendants in Polley III were unsuccessful in a motion

to the Fort Worth Court of Appeals to stay enforcement of the

Polley III judgment, the court of appeals had ordered Judge Evans

to enter an order nonsuiting An-Mar, and that Judge Evans

nonsuited An-Mar by order entered July 13, 2009, following which

the Fort Worth Court of Appeals on July 22, 2009, denied a motion

of the Polley defendants to clarify its June 30, 2009, ruling.

Judge Nelms expressed the opinion, apparently in reference

to the Polley default judgment, "that Judge Evans's order did not

become final until July the 13th, 2009, the day he signed the

order nonsuiting An-Mar," id. at 452, and that the signing of the

July 13, 2009, order "reset the timetable for, among other

things, filing a motion for new trial, and such motions were

timely filed by the Defendants in this Court on July 30, 2009,"

id. at 452-53.  From those conclusions, Judge Nelms reasoned that

the bankruptcy court did have jurisdiction over the removed

Polley III, and that, as a result, he must deny Polley's request

that the bankruptcy court remand or abstain from hearing

Adversary No. 09-04253-rfn for lack of jurisdiction.

From there, Judge Nelms turned to an analysis of why the

bankruptcy court should grant the motion of the defendants other

than Denar to set aside the Polley III default judgment and to

grant a new trial in Polley III.  His emphasis was on making an

application of In re Chesnut, 422 F.3d 298 (5th Cir. 2005), to

Polley III.[8]  Judge Nelms concluded that the claims in Polley III

---

[8]Judge Nelms emphasized the importance of In re Chesnut to his October 2, 2009, rulings by
(continued...)

were arguable property of the Metro bankruptcy estate because,

Judge Nelms concluded, "[i]t is logical . . . to view the

petition [in Polley III] as  a claim based on alter ego, single

business enterprise, or the like . . . ."  Id. at 454.  He then

reasoned that:

> Polley Three was on the date of the default
> judgment arguable property of the Metro Estate.
> This is true, even though Judge Hale later
> determined that it was not property of the estate.
> Thus, Polley Three was stayed when the default
> judgment was entered, and it remained stayed until
> Judge Hale ruled otherwise.

Id. at 455.  Judge Nelms's reasoning then seems to have been that

he had the discretion under Rule 60(b)(6) of the Federal Rules of

Civil Procedure to set aside the default judgment as to the

debtors in the Golden bankruptcy cases because the judgment was

taken in violation of the automatic stay created by the Metro

bankruptcy case.  He reasoned that:

> Whether actions taken in violation of the stay should
> be set aside according to the Fifth Circuit is subject
> to the Bankruptcy Court's discretion.  By setting aside
> the judgment as to the Golden Defendants, I exercised

---

[8](...continued)
saying:

> After all, since it is the Fifth Circuit's ruling in Chestnut [sic] that is the fulcrum of this
> Court's decision, ultimately it should be that Court and not the state courts that define the
> outer limits of arguable property of the estate.

Mot. for Leave, Exs. at 459.

that discretion under Rule 60(b)(6), and in doing so, I
exercise a jurisdiction that is exclusively federal.

Id.

Judge Nelms reiterated the finding he made when he set aside
the default judgment as to Denar that Mr. Dobbyn "credibly and
reasonably relied upon the application of the stay by not filing
an answer on behalf of the Perales-related entities." Id. at
456. Another factor Judge Nelms considered in granting Rule
60(b)(6) relief was evidence that none of the defendants in the
default judgment other than the common owner, Mr. Perales, had
any responsibility for Metro and its employees, with the
consequence that there was a showing of a meritorious defense as
to Polley's claims in Polley III. Judge Nelms exercised his
"discretion under 28 USC Section 157(b)(2)(G) not to annul the
stay that was in effect on the day the default judgment was
taken." Id. Apparently Judge Nelms reached the conclusion that
the default judgment was void because it was rendered in
violation of the Metro bankruptcy case voluntary stay, and that
because it was void "all of the issues about finality [of the
default judgment] are moot." Id. at 457.

Judge Nelms said that he was setting aside the default
judgment as to the non-debtor defendants named in it for the

27

reasons he had already stated on the record but with the added

reason as to Mr. Perales that there was evidence that he was not

properly served.

Judge Nelms's rulings on Polley's motion to lift the

automatic stay were that "to the extent that any stay as to

Polley Three is now in effect, that stay is lifted."   Id. at 462.

On October 8, 2009, Judge Nelms issued an order in Adversary

No. 09-04253-rfn that contains the following rulings:

> **ORDERED** that each defendants' default in failing
> to timely file an answer in this Adversary Proceeding
> is **SET ASIDE**; it is further

> **ORDERED** that the Default Judgment entered on or
> about October 15, 2008 is **SET ASIDE** with respect to
> each defendant; it is further

> **ORDERED** that each defendant is granted a **NEW
> TRIAL**.

Id. at 468.  Also on October 8, 2009, Judge Nelms issued an order

in Adversary No. 09-04253-rfn denying Polley's motion to sever,

remand, and abstain.

III.

The Request for Administrative Consolidation

The court already has consolidated the three civil actions

that were created by the filing of Polley's motions for leave,

and the court anticipates that if leave ultimately is granted the

appeals would be handled on a consolidated basis.

IV.

### Polley's Motion to Stay Pending Appeal

After having unsuccessfully sought in the bankruptcy court a

stay pending appeal, Polley filed in this consolidated action a

motion seeking an order staying all matters related to Adversary

Proceeding Nos. 09-04165-rfn and 09-04253-rfn pending disposition

of Polley's anticipated appeals.

While Denar and the Golden debtors objected to the motion to

stay pending appeal, they pointed out in their objection that

this court "will likely try the underlying claims to a jury once

the reference to the Bankruptcy Court is withdrawn."  Objection

to Mots. to Stay at 9.  During the telephone conference/hearing

conducted January 8, 2010, the subject of withdrawal of reference

again was raised.  The court was informed that at a status

conference Judge Nelms held the week of January 4, 2010, there

was a discussion of withdrawal of the reference, and that the

parties are in agreement that there should be a withdrawal of the

reference as to Adversary Nos. 09-04165-rfn and 09-04253-rfn.

Apparently Judge Nelms instructed counsel for Polley, Denar, and

the Golden debtors, respectively, to file a joint motion for such

a withdrawal, specifically requesting that the withdrawal be to the undersigned. The undersigned's understanding is that such a motion requesting withdrawal will promptly be filed, and that the motion also will request withdrawal of (1) related adversary proceedings, including any adversary proceedings that involve the appeal from the Polley III default judgment, and (2) all claims filed in the Denar and Golden bankruptcy cases that are based directly or indirectly on the Polley III default judgment.

Nothing the court has received indicates that Polley II was removed to federal court. Of course, if it was removed, consideration should be given to including it in any motion requesting withdrawal of the reference. If it has not been removed, consideration should be given to removing it so that it can be dealt with along with Polley III.

V.

### The Standard for Determining Whether to Grant an Interlocutory Appeal

This court has jurisdiction to hear an appeal from an interlocutory order of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(3) if leave of court to appeal is granted. Section 158(a) does not provide a standard for a district court to use in determining whether to grant leave to appeal; however, the courts

generally have applied the standard provided under 28 U.S.C.

§ 1292(b) for interlocutory appeals from district court orders to

a court of appeals.  See Ichinose v. Homer Nat'l Bank, 946 F.2d

1169, 1177 (5th Cir. 1991).  That standard includes the following

elements:  (1) the existence of a controlling issue of law as to

the interlocutory order, (2) as to which there is substantial

ground for difference of opinion, and (3) that an immediate

appeal from the order may materially advance the ultimate

termination of the litigation.  See 28 U.S.C. § 1292(b).

VI.

Polley's Contentions, and the Court's
Conclusions, as to the Three Elements

A controlling issue of law is one that could materially

affect the outcome of the case.  See In re Baker & Getty Fin.

Servs., Inc., 954 F.2d 1169, 1172 n.8 (6th Cir. 1992).  Polley

urges as controlling issues of law the following:

1.   [W]hether the bankruptcy court possessed
     jurisdiction to consider the Motions for New Trial
     when 1) prior to removal, the time period in which
     the state court maintained jurisdiction had
     previously run out under state rules and
     procedures; and 2) the Debtors' filing of a notice
     of appeal divested the Bankruptcy Court of its
     jurisdiction.

Mot. for Leave in 4:09-CV-641-A at 12.

31

2.    [T]he Bankruptcy Court's rulings concerning the
enforceability of the Judgment present a
controlling question of law.

Id.

The jurisdictional issue does not appear to be a question of
subject matter jurisdiction but, instead, is a question as to
whether the bankruptcy court had the power "to sit in direct
review of the state court's default judgment decisions."   Id.
Polley's argument related to the second controlling issue
suggested by her appears to focus on whether the bankruptcy court
had the power under the facts presented to grant relief from the
default judgment under Rule 60(b) of the Federal Rules of Civil
Procedure.   Id. at 12-13.   Further refined, Polley's presentation
of the second question appears to focus on whether the facts
before the bankruptcy court presented circumstances of a kind
that would authorize grant of relief under Rule 60(b).   Id.

The court concludes that the issue of whether the bankruptcy
court had the authority to review the decisions of the state
court related to the default judgment is a controlling issue of
law in the sense that if it were to be resolved in favor of
Polley it would be outcome-determinative.   Similarly, the court
concludes that the issue of whether the bankruptcy court had the
power under Rule 60(b) to set aside the default judgment and

grant a new trial is a controlling issue of law in the same
sense.   There appears to be a substantial ground for difference
of opinion as to the proper answer to each of such questions.   An
immediate appeal from the orders of which Polley complains may
materially advance the ultimate termination of the litigation
between Polley, on the one hand, and Denar, the Golden debtors,
and the non-debtor defendants in Polley III, on the other.
Therefore, Polley is eligible for an order granting her leave to
file interlocutory appeals.   However, the court is not rendering
such an order at this time, but will await, at least for the time
being, developments related to possible withdrawal of references.

VII.

The Stay of the Adversary Proceedings<br>
and<br>
Requirement That the Parties Report to the Court

During the January 8, 2010, telephone conference/hearing
counsel informed the court that they were of the belief that a
stay of the relevant adversary proceedings pending steps that are
anticipated leading to possible withdrawal of the reference as to
relevant bankruptcy court proceedings, as mentioned above, would
be appropriate.   The court hereby ORDERS such a stay so that, if
reference is withdrawn as to such proceedings, the district court

will have an opportunity to deal with all matters in a coordinated manner.

So that the court will be kept abreast of actions taken that could lead to a withdrawal of references of relevant bankruptcy proceedings, the court DIRECTS the parties to file in this consolidated action by January 28, 2010, a joint report, signed by lead counsel for each party, informing the court of steps that have been taken relative to possible withdrawal of references. In the same report, the parties shall inform the court of the present status of Polley II, and of any actions that have been taken, or are proposed to be taken, to cause Polley II to be combined with the other relevant proceedings.

THE COURT SO ORDERS.

SIGNED January 14, 2010.

_____
JOHN McBRYDE
United States District Judge